GEORGE WAFFLE, Appellant, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

A railroad company has the right to drain the surface water from its lands through ditches dug therein into a stream which is the natural outlet, although the quantity of water in the stream is thereby increased in time of high water and diminished at other times to the damage of a riparian proprietor below.

*Clinton* v. *Myers*, 46 N. Y., 511, distinguished.

(Argued May 6, 1873 ; decided May 13, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of defendant, entered upon an order denying a motion for a new trial and directing judgment upon a nonsuit granted at circuit.

This action was brought to recover damages for an alleged interference by defendant with the flow of the waters of Little Black creek, in the town of Gates, Monroe county. Plaintiff owned a saw-mill and premises upon said creek. Defendant, in order to drain off surface water from its lands lying above the plaintiff's, dug two ditches upon its own lands, discharging into the creek, which was the natural outlet of such waters. The water was thus carried off more directly and expeditiously, and in times of high water raised the water of the creek, and at other times in consequence of

the rapid drainage reduced its volume, affecting somewhat the use of plaintiff's mill.    Other facts appear in the opinion.

Defendant's counsel moved for a nonsuit which was granted, and exceptions ordered to be heard at first instance at General Term.

*George E. Ripsom* for the appellant.    Plaintiff had a right to have the surface waters of the stream above him flow to him in their usual and natural way. (*Clinton* v. *Myers*, 46 N. Y., 511; *Earl* v. *De Hart*, 1 Beasley, N. J., 280, 283, 284; *Halsman* v. *Boiling Spring Bl. Co.*, 1 McC. [14 N. J. Ch.], 335, 342; *Kauffman* v. *Criesimer*, 26 Penn. St., 407; *Martin* v. *Riddle*, id., 415; *Williams* v. *Gale*, 3 H. & J., 231; *Potter* v. *Peck*, 16 Ohio St., 334; *Martin* v. *Jett*, 12 Ala., 501; *Dickinson* v. *Worcester*, 7 Al., 19, 22; *Brand* v. *Murphy*, 37 Vt., 99; *Belknap* v. *Trimble*, 3 Paige, 577, 605; *Haight* v. *Price*, 31 N. Y., 241.)    Plaintiff had a right to have the whole stream pass that point of its course in its natural bed. (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y., 42; *Cott* v. *Lewiston R. R. Co.*, 36 id., 214; *Pixley* v. *Clark*, 35 id., 520.)

*Edward Harris* for the respondent.    Defendant had a right to drain off the surface water through its ditches, and plaintiff was properly nonsuited.    (Angell on Water-courses, § 108, and cases cited; § 108, *a, b, c, s; Rawston* v. *Taylor*, 11 Exch., 369; *Goodale* v. *Tuttle*, 29 N. Y., 467; *Lampman* v. *Milks*, 21 id., 505–507.)

GROVER, J.    The evidence did not show that the ditches made by the defendant diverted water into the stream upon which the defendant's saw-mill was situated, which had any other outlet than into such creek.    Had that been proved, and that the plaintiff sustained an injury from an increased quantity flowing in the stream he would have been entitled to recover therefor.    By cutting the ditches through the bluffs the water reached the stream by a shorter and more

direct course than it before had done. The defendant's
ditches discharged the water into the stream nearly two
miles above the plaintiff's mill. They were nearly two miles
in length, diverted running water communicated with no
stream except at the point where they discharged into the
creek upon the land of the defendant. They conducted the
surface water from considerable of an area of low swampy
land, and in high water discharged into the stream compara-
tively a large quantity of water, caused the water at such
times to rise higher at the defendant's mill than it otherwise
would, and to some extent prevented the use of the mill by
back water, and at other times reduced the quantity of the
water flowing in the stream so that it was not sufficient to
operate the machinery. This gave no right of action to the
plaintiff. The defendant had an absolute right to drain the
surface water upon its land into the stream which was its
natural outlet through ditches constructed upon its own land,
although the quantity of water in the stream was thereby
increased in times of high water, and diminished at other
times. (Angel on Water-courses, 6th ed, § 108a to 108s.)
The authorities in this country and England upon this sub-
ject are collected and revised by the author, and clearly
establish the right claimed by the defendant. (*Goodale*
v. *Tuttle*, 29 N. Y., 459; *Rawstron* v. *Taylor*, 11 Exch.,
369; *Gannon* v. *Hargadon*, 10 Allen, 106; *Miller* v.
*Laubach*, 47 Penn., 154.) A proprietor having the right
to reclaim his land by draining the surface water therefrom
by ditches discharging into a stream running thereon which
is the natural outlet of the water, the object of doing so,
whether for the erection of buildings, agriculture or con-
structing a railroad thereon, is wholly immaterial. He may
so drain whenever disposed to do so irrespective of the object.

The counsel for the appellant cites *Clinton* v. *Myers* (46 N.
Y., 511), as in conflict with this view. There is no such
conflict. The right of a proprietor to drain surface water
from his land was not at all involved in that case. There
the question was whether a proprietor had a right to erect a

dam across a stream so as to detain a large quantity of water and store the same for future use, and discharge the same in quantities adapted to his own machinery but not to that of a proprietor upon the stream below. Held, that he had no such right. The stream in question was a permanent stream, and whether formed by the union of the outlets of numerous springs in the vicinity of the dam or had a more remote origin was immaterial. In the present case the surface water was discharged through the ditches into the stream. There is in the case no question as to the rights of a proprietor of lands situate lower to be protected from a discharge of surface water in unusual quantities at particular points upon his land by artificial structures upon land situated higher, and, therefore, that will not be considered.

The nonsuit was rightly granted, and the judgment of the General Term affirming the judgment entered thereon must be affirmed.

All concur

Judgment affirmed.